ROGERS, Public Adm. vs. HOBERLIEN.

*Twelfth District Court for San Francisco Co., Nov. T., 1857.*

PUBLIC ADMINISTRATOR—HIS SUCCESSOR IN OFFICE.

A public administrator receives letters of administration by right of his office, and not on account of any connection with the particular estate ; and all his powers and duties end with his term of office, and devolve to his successor in office.

His successor in office being thus the assignee of leases made by the predecessor, may bring an action in his own name to collect the rent.

This action was brought to recover the sum of $1500, for rent of premises leased to defendant by *Samuel Flower*, late public administrator, and administrator of the estate of *Augustus Deck*, deceased. The premises were the property of *Deck*, and in the discharge of his trust, said *Flower* leased them to *Hoberlien*.

*D. Rogers*, for plaintiff.

*Shafters, Park & Heydenfeldt*, for defendant.

Norton, J.—This case is submitted on an agreed statement " upon the single point that the plaintiff has no right to maintain this action because he is not in any respect the administrator of *Augustus Deck*."

It is agreed that the probate court made an order in January, 1855, " that letters of administration issue to *Samuel Flower*, public administrator ; " that the present plaintiff is his successor in the office of public administrator, and to whom he handed over all the papers he had as administrator of the estate, and I suppose it is intended to be admitted, and perhaps the defendant is estopped from denying, that the lease in question was executed by *Flower* as such administrator.

The question is, whether a public administrator, appointed to administer an estate, holds the trust like any other administrator until specially removed or the estate fully administered, or whether he holds as a public officer whose functions cease upon the qualification of his successor in office. The obscurity of the statutory provisions upon the subject has doubtless arisen from the piece-meal mode in which they have been enacted. By chapter 14 of the law of 1850, relative

to the estates of deceased persons, the probate court was authorized to appoint a public administrator, and his powers and duties were clearly defined, and by which it appears he was not to be an administrator proper of particular estates, but was merely to be a public officer whose duties were to preserve the property of deceased persons until a regular administrator should be appointed. He was not named in section 52 as a person authorized to receive letters. Under the law there would seem to be no doubt that his powers and duties would cease with the expiration of his term of office. The next year, March 8th, 1851, a special law for the county of San Francisco was passed, making the public administrator for that county elective. It is well known that this law was passed for the special purpose of ousting the person who then held the office by appointment of the probate judge. The law is brief and imperfect, providing for scarce anything except an election the next month, and that the " present" incumbent should hand over everything to his successor. Soon after (April 15, 1851,) this law was abrogated by a general law for all the counties of the State, but this appears to have been copied from the special law for San Francisco county, and has the same defect in this respect—that is, it only provides that the " present " incumbents shall transfer the property in their hands to their successors. This limitation to " present " incumbents must have been an inadvertence. The abstract in the margin indicates the understanding of those engaged in the publication of the law. No special duties of the officer are prescribed by this act, but by section three he is required to perform such duties as may be prescribed by law. At this time such duties were distinctly prescribed by section 310, chapter 14, of the act of 1850, relative to the estates of deceased persons, and the public administrator was not authorized as such to receive letters of administration. Soon after this (May 1, 1851,) the law of 1850, relative to the estates of deceased persons, was repealed, and another passed in its stead. In this law, the provisions of section 310 of the former law, prescribing the duties of public administrator, are omitted, and, on the other hand, he is named as one who is authorized to receive letters of administration **upon particular** estates. The plaintiff's counsel claims that *Flower* did not hold **this** estate by virtue of his appointment as administrator of this particular

estate, but by virtue of his office of public administrator, and apparently bases this upon the remarks made by justice BURNETT in the case of *Becket* v. *Selover*, 7 *Cal.*, January term, as to the meaning of section 305 of the act of 1851, relative to the estates of deceased persons. Had the judge's attention been directed to the circumstance that the powers which he considers conferred by section 305 were specially conferred in the act of 1850, by a section immediately preceding the one now numbered 305, and the omission of that section in the act of 1851, he might have considered that section 305, and some other sections of chapter 14 of the present act, have no intelligible meaning, and that they have been only left there by the effect of bad legislative joinery, and that at present public administrators have no powers until they receive letters, except such as may be conferred under section 88, and perhaps some similar sections. However this may be, there can be no doubt under the facts of this case that *Flower* took the lease in question in his character of administrator of the estate of *Deck*, under his special appointment. But does it follow that his powers as such continued after the expiration of his office of public administrator? If we are not at liberty to consider the word "present," in section six of the act of 1851, relative to public administrators, as a surplus word inadvertently copied so as to apply that section to this case, at least that section indicates the legislative understanding that there is no intrinsic objection to such a change of administration, and may serve to answer the argument, founded upon the inconvenience of such a change, and the improbability of its being intended by law. On the other hand, the public administrator receives letters, by right of his office, and not on account of any connection with the particular estate; his bond is not yet given, nor oath taken, in each case, but only upon entering upon his public office, and in the absence of any provisions of law relative to his office, different from those applicable to all public officers, it would seem that all his powers and duties ended with his term of office, and devolved upon his successor in office. If he be properly the administrator of each particular estate, he obtains the trust by a law applicable to him as public officer, and there seems to be no reason why his letters, and the assets he holds under them, may not pass to his successor in office as effectually by operation of law, as to have his

letters especially revoked, and new ones issued by an order of the probate court. His successor being thus the assignee of the lease, may bring the action in his own name to collect the rent.

In this case judgment must be entered for the plaintiff.